## LIEBMANN et al. v. NEWCOMB.

(Court of Appeals of District of Columbia. Submitted November 12, 1920. Decided January 3, 1921.)

No. 1351.

1. Patents ☞90(5)—Prior invention, not meeting standard of issue, is not reduction to practice.

If both inventions meet the standard set up by the issue, the poorer one, if prior in point of time, would prevail; but, if the prior invention fails to meet that standard, it is not a reduction to practice.

2. Patents ☞90(5)—Earlier application held not to disclose invention of issue.

The senior application in an interference proceeding on an issue for a make-and-break contact, consisting only of a face plate of tungsten and a support of iron or steel welded thereto, which shows a construction whereby the tungsten was so alloyed with the iron that the face plate was no longer of tungsten only, does not disclose a reduction of the issue to practice, and the junior applicant is entitled to priority, since the invention falls in that class where the machine is intended for particular use, and reduction to practice in such case requires satisfactory operation in the actual execution of the object.

Smyth, Chief Justice, dissenting.

Appeal from the Commissioner of Patents.

Interference proceeding between Alfred J. Liebmann and another and Harold A. Newcomb. From a decision of the Commissioner of Patents, awarding priority of invention to Newcomb, Liebmann and another appeal. Reversed.

Cornelius C. Billings, of New York City, for appellants.

Wesley G. Carr, of East Pittsburgh, Pa., for appellee.

VAN ORSDEL, Associate Justice. This appeal is from the decision of the Commissioner of Patents in an interference proceeding awarding priority of invention to appellee. The invention is an electric make-and-break contact having a tungsten face plate welded to a supporting base of iron or steel. The issue is in the following counts:

"1. An electric make-and-break contact consisting only of a face plate of tungsten and a supporting base of another metal of comparatively high melting point secured directly to each other by an electrical resistance weld.

"2. An electric make-and-break contact consisting only of a face plate of tungsten and a support of iron or steel welded thereto."

Appellants were granted a patent for the invention October 5, 1915, on an application filed May 22, 1915. Appellee filed January 4, 1916, a division of an application filed May 11, 1914, into which

he copied the claims in issue from appellants' patent. Appellee's original filing date of May 11, 1914, is prior to any date claimed by appellants. Hence, if he sufficiently disclosed the invention in his earlier application to constitute constructive reduction to practice, he must prevail.

The whole case turns upon appellee's earlier application, which claims only a process of welding tungsten to steel. After describing the process in the application, appellee states:

"Various applications of welded metals produced according to my process will readily suggest themselves to persons skilled in the art. For example, when it is desired to form electrical contact elements having an effective surface of tungsten attached to an iron or steel support, rods of steel and tungsten may be welded together according to the process described above and then broken at the joint, half of the tungsten rod being attached to each of the steel rods. The welded end of each half may then be ground into any suitable form."

At this time tungsten contacts belonged to the prior art; hence, the suggestion involved no inventive conception. Appellee, at most, disclosed a process for producing "electrical contact elements" by a combination of tungsten and steel. There is nothing in his application describing a process for welding a face plate of tungsten directly to a support of iron or steel under conditions which will keep the tungsten free from alloy with the steel, nor is any claim made for such a product. Indeed, there is nothing in the application to indicate that appellee had in mind the invention of the present issue.

The present contention may be best disposed of by an analysis of the object and purpose of the invention. Electrical make-and-break contacts may be made of any of the common metals; but experience has demonstrated that contacts made, for example, of iron or steel would possess little or no utility, since they would disintegrate under the severe test to which these contacts are subjected. Tungsten, however, is the one metal which possesses the qualities of endurance best suited for this purpose. It follows that the tungsten, to meet the requirement, must be kept free from impurities which would affect its durability. The standard set by the issue is a face plate of tungsten metal, not a combination of tungsten and other metals. The invention consists in successfully welding a face plate of tungsten directly to a support of iron or steel. It was old in the art to accomplish this by using "solder of copper, silver or gold," as disclosed in an earlier patent to one Coolidge. To produce a product—and this is a product, not a process, invention—which would amount to invention or an improvement over the prior art, the product made by substituting a direct weld for the "solder of copper, silver or gold" must contain a tungsten face plate which will maintain the high standard recognized for the contacts having face plates of this metal. It is not sufficient that a piece of tungsten has been welded or fused into a piece of steel, unless the tungsten retains its full power to withstand the test of which it is capable as shown by the prior art.

[1, 2] This is not a case where one of two inventions is poorer than the other. Of course, if both meet the standard set up by the

issue, the poorer one, if prior in point of time, would prevail. But if either one fails to meet the required standard of the issue, it is not a reduction to practice. What is the standard here set up?

"An electric make-and-break contact consisting only of a face plate of tungsten and a support of iron or steel welded thereto."

It logically follows that, if in the process of welding, the tungsten becomes impregnated with a foreign substance or alloyed with the iron or steel, which leaves it with less resistance than pure tungsten, it is no longer only "a face plate of tungsten."

It must be remembered that the issue not only calls for a face plate of tungsten, but it appears that tungsten, by reason of its extremely high melting and low vaporization qualities, is a very superior metal for the purpose required. It also conclusively appears that in appellee's product the tungsten was so alloyed with the iron in the process of welding that it was incapable of making a contact which would withstand any reasonable test. It failed to meet the test of the prior Coolidge invention or the tests to which the product of appellants was subjected. The Coolidge statement showed a contact which would stand 32,000,000 makes-and-breaks without showing material depreciation, and appellants' contact, after being tested to the equivalent of a 50,000-mile run on an automobile, showed such slight evidence of depreciation that it required the aid of a magnifying glass to detect it; while the contact made by the process described in appellee's 1914 application deteriorated almost beyond the point of usefulness in the equivalent of a 1,000-mile run.

In the case of Sydeman v. Thoma, 32 App. D. C. 362, the court, considering what in law amounts to actual reduction to practice, said:

"Decisions involving this often-litigated question of actual reduction to practice may be divided into three general classes. The first class includes devices so simple and of such obvious efficacy that the complete construction of one of a size and form intended for and capable of practical use is held sufficient without test in actual use. [Cases cited.] The second class consists of those where a machine embodying every essential element of the invention, having been tested and its practical utility for the intended purpose demonstrated to reasonable satisfaction, has been held to have been reduced to practice notwithstanding it may not be a mechanically perfect machine. In other words, it is sufficient reduction to practice, although a more desirable commercial result may be attained by some simple and obvious mechanical improvement, or by substituting another well-known material for the one used in the original construction, as, for example, metal for wood, cast metal for sheet metal, and the like. [Cases cited.] The third class includes those where the machine is of such a character that the particular use for which it is intended must be given special consideration, and requires satisfactory operation in the actual execution of the object. [Cases cited.]"

We think the invention here comes within the third class. The tests made in attempting to meet the counts of the issue from the description set forth in appellee's earlier application resulted substantially in the product described and claimed in that application—not in the welding of a face plate of tungsten directly to a steel support, but in a welding process which consisted rather in fusing than in welding, and in the alloy of the metals. This fails entirely to meet the counts

of the issue, and results in the failure of appellee's earlier application to constitute a constructive reduction of the invention to practice.

The decision of the Commissioner of Patents is reversed, and the clerk is directed to certify these proceedings as by law required.

Reversed.

Mr. Chief Justice SMYTH dissents.